UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Iron Gate Hardware, LLC, | : | |
|     Plaintiff, | : | Civil Action 2:22-cv-01132-CFK |
| v. | : | Jury Trial Demanded |
| John Doe d/b/a Frontline Boutique, | : | |
| John Doe d/b/a Armed Forces Boutique, | : | |
| James Jannuzzio, | : | |
| Trevor Nix, | : | |
| Dominic Malizia, | : | |
| Domenic South, | : | |
| Tristan Peters, | : | |
|     Defendants. | : | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.     Summary.**

The only works *actually* designed or created by Plaintiff's staff accountant are two-dimensional pencil sketches on graph paper. Ex. L.  The design of the three-dimensional jewelry was entrusted to a third-party.  This creates a problem that arises in copyright law when a third-party manufacturer fixes the three-dimensional work based only on conceptual guidance from the plaintiff.  *E.g., Gaylord v. United States*, 595 F.3d 1364, 1379 (Fed. Cir. 2010).  In such situations, the plaintiff is the author of the three-dimensional work only if the manufacturer "simply builds the work as instructed."  *Billco Int'l, Inc. v. Charles Prods.*, 776 F. Supp. 2d 105, 112 (D. Md. 2011).  As explained by Defendants' unrebutted jewelry expert, Plaintiff's pencil sketches are so lacking in information, there are so many design choices are left to the manufacturer's discretion, and the gap between Plaintiff's sketches and the 3D works is so wide, that Plaintiff falls on the wrong side of the line set out in *Gaylord v. United States* and similar cases.  Bucci Report (Ex. M), 6.

Plaintiff has no liability expert, and "jewelry design is a sufficiently technical area that not every juror will be well-equipped to identify the similarities between two designs on his or her own." *R.F.M.A.S., Inc. v. Mimi So*, 748 F. Supp. 2d 244, 284 (S.D.N.Y. 2010). Plaintiff has an additional problem that the works Plaintiff actually created are two-dimensional sketches (which Plaintiff failed to obtain registrations for). To show substantial similarity, Plaintiff would have to explain not just the technical aspects of jewelry design, but also create a bridge from the 2D sketches – the only works actually created by Plaintiff's staff accountant – to the 3D jewelry. Plaintiff cannot do so without an expert, and much less so when Plaintiff failed to rebut Defendants' own expert. *See Stiso v. State Farm Fire & Cas. Co.*, 2015 U.S. Dist. Lexis 155762, at 25-26 (D.N.J. Nov. 18, 2015) (listing cases holding that federal courts may rely on uncontradicted expert reports to grant summary judgment).

Plaintiff has no copyright assignment, and contends only that Plaintiff's staff accountant created the works within her scope of employment. Every document describing the accountant's scope of employment – and there are three that do so in detail at Ex. D and collectively at Ex. E – list a long series of accounting related tasks and completely fail to mention jewelry design, design of any kind, or anything in the fine arts. Plaintiff has no assignment, Plaintiff's employee has a profession which is not even remotely associated with jewelry design, and every document describing the employee's role contradicts Plaintiff's position on scope of employment.

Plaintiff is a logistics and fulfillment company – it is not in the jewelry space, period. Logically, it cannot be within an employee's "scope of employment" to do something that the employer itself does not do. Plaintiff does not sell the seven works of copyrighted jewelry or any other jewelry. Danby Dep. (Ex. F), 181:17-20. Instead, the copyrighted jewelry is purchased and then sold by non-party Greenville Ventures. Id., 180:18-21, 241:9-11, 242:17-22, 244:6-21.

Instead, when Huang ordered jewelry from the manufacturer, she did so on behalf of Greenville Ventures, not on behalf of Plaintiff. Id. There is no licensing agreement between Greenville Ventures and Plaintiff. Id., 181:21-24. Plaintiff has repeatedly admitted that the jewelry works were created for another entity, Greenville Ventures: "In mid-2019, Peter Danby, Manager of the Plaintiff, instructed Ms. Huang to begin sourcing jewelry products to be be [sic] sold by Greenville Ventures, LLC …" Pl. Answer to Interrogatories (Ex. B), 3. "The manufactured jewelry is sold by a separate entity, Greenville Ventures …" Id. at 2.

To sustain Plaintiff's theory of ownership, the Court would have to accept that Plaintiff's staff accountant created jewelry *impliedly* within the accountant's scope of employment; that it was within the accountant's scope of employment despite no supporting documentation and three documents that fail to mention design in their detailed descriptions of the accountant's job; that the work was implied to be in the accountant's scope of employment even though the Plaintiff itself has no jewelry business; and that the work was implied to be in the accountant's scope of employment even though it is acknowledged by Plaintiff that the jewelry was created for another business, Greenville Ventures.

To sustain Plaintiff's theory of authorship and substantial similarity, the Court would have to accept that the sketches conveyed sufficient information to the manufacturer to simply build the works as instructed, despite the only jewelry expert in the case stating the opposite; the Court would have to accept that the manufacturer fixed the work for Plaintiff even though the manufacturer was not even retained by Plaintiff, but by Greenville; and the Court would have to accept that Plaintiff can show without a liability expert that three-dimensional works in a technical field such as jewelry are substantially similar to a two-dimensional sketch.

3

**II.     Argument.**

    **A.     Standard.**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties must show that a fact is or is not genuinely disputed by citing to the record, by showing that the materials cited do not establish the absence or presence of a genuine dispute, or by showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Where there are no genuine issues of material fact, the Court may properly resolve any remaining questions of law on summary judgment. *Ingram v. County of Bucks*, 144 F.3d 265, 267 (3d Cir. 1998).

    **B.     Plaintiff did not retain an expert, and expert testimony is required to show that two works of jewelry are substantially similar.**

Plaintiff did not retain an expert to show substantial similarity between Plaintiff's works and Defendants' works. However, "jewelry design is a sufficiently technical area that not every juror will be well-equipped to identify the similarities between two designs on his or her own." *R.F.M.A.S., Inc. v. Mimi So*, 748 F. Supp. 2d 244, 284 (S.D.N.Y. 2010). Jewelry design is sufficiently technical that expert testimony is required to explain to the jury the similarities between two designs. Bucci Dep. (Ex. A), 14:10 – 23:3, 99:15 – 103:2, 145:24 – 153:20.

Here, Plaintiff's failure to retain a liability expert is particularly problematic because the only works *actually* designed and created by Plaintiff's employee are two-dimensional pencil sketches. To prove substantial similarity between the two-dimensional sketches actually authored by Plaintiff's employee and Defendants' three-dimensional pieces of jewelry requires not just an analysis of the technical aspects of jewelry, but also a "bridge" from a 2D medium to a 3D medium.

Plaintiff did not create jewelry, three-dimensional models of jewelry, or even computerized models of jewelry.  As discussed in section F below, under case law on third-party fixation of three-dimensional works, Plaintiff's conceptual guidance to the third-party manufacturer was not sufficiently concrete for Plaintiff to be deemed the author.  *E.g., Gaylord v. United States*, 595 F.3d 1364, 1379 (Fed. Cir. 2010).  The three-dimensional jewelry was designed by a third-party manufacturer.  As set out in Plaintiff's expert report, Plaintiff's pencil sketches are so lacking in information, so many design choices are left to the manufacturer's discretion, and the gap between Plaintiff's sketches and the 3D works is so wide, that Plaintiff is *not* the author of the jewelry.  Bucci Report (Ex. M), 6 ("… the manufacturer images and physical samples depart significantly from the Huang sketches, indicating that the third party had to essentially start from scratch in designing jewelry"); *id.* at 5 ("The Huang sketches give no indication of how these works are to be designed in three dimensions, how the pieces are rounded as they curve through three-dimensional space … essential design choices such as finish (e.g., vitreous or cold enamel), choice of metal (e.g., gold, silver, or a base metal such as brass or nickel), whether backs of the pieces are hollow, and how the elements are attached (e.g., jump ring), are left out.  These design choices are all essential parts of the artistic expression of jewelry design").

Plaintiff has registered copyrights on the jewelry works themselves, each of which was in fact designed by a third party.  However, the only works on which Plaintiff could conceivably own a copyright are the two-dimensional sketches – the only works *actually* created by Plaintiff's employee.  Plaintiff has not obtained copyright registrations for the two-dimensional sketches.  Even if Plaintiff had, Plaintiff would need a liability expert to cross a change in medium between the two-dimensional works actually created by Plaintiff and Defendants' three-

dimensional works.  For these reasons, Plaintiff cannot create a genuine issue of fact on whether the works actually created by Plaintiff's employee are substantially similar to Defendants' works of jewelry.

    **C.**    **Plaintiff's staff accountant does not have jewelry design within her scope of employment.  Plaintiff's position – that its staff accountant had "jewelry design" within the scope of her employment – contradicts the exhaustive list of duties in the accountant's employment letter and Plaintiff filings with the U.S. Department of Labor.**

The U.S. Supreme Court has defined the work made for hire doctrine by reference to the traditional rules of agency.  *CCNV v. Reid*, 490 U.S. 730, 740 (1989).  The result is that there are three requirements for a work to fall within an employee's "scope of employment":  "(1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the employer."  *TD Bank N.A. v. Hill*, 928 F.3d 259, 276-77 (3d Cir. 2019) (quotations omitted).

The employee who Plaintiff claims authored the jewelry is Plaintiff's staff accountant, Lixing Huang.  Pl. Answer to Interrogatories (Ex. A), 1.  Plaintiff does not allege that there was an assignment from Huang to Plaintiff.  Rather, Plaintiff alleges that the works were for hire.  Second Amended Complaint (ECF 21), ¶ 16.  But Huang is an accountant – in fact, Huang is a CPA with four business degrees.  Huang Dep. (Ex. C), 8:12 – 12:19.  Huang has a bachelor's degree in accounting (*id.*, 9:1-2), a bachelor's degree in management information systems (*id.*, 10:9-10), a masters in accounting (*id.*, 12:6-7), and a masters in finance (*id.*, 12:16-17).

There are several documents describing the scope of Huang's employment, and they all list job duties that one would expect a staff accountant to have.  Not one of them lists the design of jewelry, or design in general, or anything broadly within the fine arts.

Huang's employment letter describes her role as a staff accountant. It lists duties that are expected from an accountant. It does not list the design of jewelry (or anything that would encompass the design of jewelry). Huang's offer of employment lists 15 job duties. Ex. D, Pl000295-96. Design of jewelry is not mentioned, nor is any artistic duty. Id. 12 out of 15 duties listed are what would be expected of a CPA:

- Maintain the general ledger and prepare financial statements and supporting schedules according to quarterly close schedules;
- Perform month-end reconciliations of key financial statement accounts and investigate account variances;
- Customize and maintain different reports via QuickBooks for operational teams to monitor daily transactions;
- Provide monthly forecast of miscellaneous warehousing and marketing costs;
- Prepare comprehensive quarterly/annual expense schedules to assist management as needed;
- Substantiate and justify expenditures and expense reports;
- Develop and implement various accounting procedures regarding cash receipts, cash disbursements, fixed asset additions and disposals, purchases, sales, inventory, investment, etc.;
- Randomly audit work flow to assure that all accounting transactions are appropriately authorized;
- Examine, develop and implement internal controls to ensure accurate recordkeeping, reporting, and compliance in accordance with appropriate/applicable accounting principles and pronouncements;
- Evaluate existing operational procedures to identify exceptions, control weaknesses, and work problems; consider available alternate methods of proceeding and solutions for process simplification;
- Serve as an ongoing liaison between accounting/finance and our third-party IT solution provider as it relates to the financial applications of the internally-built online tracking, shipping, and billing systems;
- Handle the Company audited financial statements and tax return matters and act as a liaison with the Company's CPA firm and Payroll Agent.

Id. at Pl000295-96.

The remaining three have no relation to design, but are rather what the employment letter calls "Sino-centric tasks":

- Manage cross-border accounting and taxation issues including the Chinese VAT system;

- Assist in our relationships with potential Chinese investors;
- And assist in the development and maintenance of relationships with Chinese logistics firms and manufacturers – in the latter case, on behalf of our clients.

Id. at Pl000296.

Since Huang is a Chinese citizen, Plaintiff made several filings with the U.S. Department of Labor to allow Huang to work for Plaintiff in the United States. In those filings, Plaintiff repeatedly describes Huang's scope of employment in excruciating detail to the federal government. Plaintiff never once mentions that Huang was a designer of jewelry. Rather, Plaintiff repeatedly represents to the federal government that Huang performs a long list of duties each of which fits within the accounting field:

> As an Accountant, Ms. Huang will prepare, analyze, and review account reconciliations, financial statements, balance sheets, and statistical reports for company's financial records and transactions. She will also design and maintain purchasing, billing, and accounting functions for logistics-oriented management information systems for domestic and international vendors and customers. Ms. Huang will be responsible for developing, implementing, modifying, and documenting recordkeeping and accounting systems, utilizing accounting programs. She will also analyze budget patterns and project expenditures for sales orders and perform cost and over-head spending analysis. As Accountant, Ms. Huang will review capital management metrics and provide quantitative analysis to management in addition to preparing and reviewing financial and statistical reports, analyzing inconsistencies and reporting findings to senior management. She will develop and implement accounting practices regarding cash receipts, cash distribution, fixed asset addition and disposal, purchase, sales, inventory, and investment. Additionally, Ms. Huang will utilize accounting and auditing methods and procedures to assist in the design and maintenance of inventory and accounting management functions in management information systems (Infoplus, 3PL Central, and Veracore OMS/WMS) and with third party software and/or platform integration (Quickbooks, Amazon FBA, Shopify, Volusion and 3D Card). She will also prepare monthly, quarterly, and annual trend analysis of earnings before interest, taxes, depreciation and amortization, and cost trends and provide recommendations to company leadership on areas of improvement. Finally, Ms. Huang will utilize operational performance ratios to measure budgeting, planning, and cash flow.
> Because the specific duties of Accountant are so specialized and complex, the knowledge required to perform these duties is normally associated with the

> attainment of a minimum of a Master's degree in Finance, Accounting, or a related field. These are Iron Gate's normal requirements for the subject position.

Ex. E at Pl000311-12.

> Examine and analyze accounting records, financial statements and other financial reports to assess accuracy, completeness and conformance with reporting and procedural standards. Develop management, narrative and statistical reports detailing accounting activities for senior management review. Develop and implement accounting practices with regard to cash receipts, cash disbursements, changes to fixed assets, purchases, sales, inventory and investments. Analyze business patterns and project expenditures for sales orders. Manage tax return matters and will continue to monitor chart of accounts and accounting ransactions for proper classifications. Design and maintain internal controls to ensure compliance with company policies and best practices. Analyze financial performance in order to make determinations to add value and improve profitability. Manage cross-border accounting and taxation issues including the Chinese Value Added-Tax ("VAT") system.

Ex. E at Pl000309.

### D. The jewelry works were not created for the benefit of Plaintiff.

Plaintiff's "work for hire" theory has another fatal problem, which is that the works were not created for the benefit of Plaintiff. Interpreting the Supreme Court's decision in *CCNV v. Reid*, the Third Circuit has held that a work for hire must be "actuated, at least in part, by a purpose to serve the employer." *TD Bank*, 928 F.3d at 277.

Plaintiff does not sell or manufacture jewelry and has never sold or manufactured jewelry. Plaintiff is a logistics and fulfillment company – it is not in the jewelry space, period. Plaintiff does not sell the seven works of copyrighted jewelry or any other jewelry. Danby Dep. (Ex. F), 181:17-20. Instead, the copyrighted jewelry is sold by non-party Greenville Ventures. Id., 180:18-21. Plaintiff does not purchase the jewelry from the jewelry manufacturer. Id., 241:9-11, 242:17-22, 244:6-21. Instead, when Huang ordered jewelry from the manufacturer, she did so on behalf of Greenville Ventures, not on behalf of Plaintiff. Id. There is no licensing agreement between Greenville Ventures and Plaintiff. Id., 181:21-24.

9

It cannot be within an employee's "scope of employment" to do something that the employer itself does not do. Huang's employment letter explicitly states that when Huang deals with Chinese manufacturers it is not on behalf of Iron Gate but rather on behalf of Iron Gates "clients" such as Greenville: "• And assist in the development and maintenance of relationships with Chinese logistics firms and **manufacturers** – in the latter case, **on behalf of our clients**." Ex. D at Pl000296.

Plaintiff has repeatedly admitted that Huang created these works of jewelry for another entity, Greenville Ventures: "In mid-2019, Peter Danby, Manager of the Plaintiff, instructed Ms. Huang to begin sourcing jewelry products to be be [sic] sold by Greenville Ventures, LLC …" Pl. Answer to Interrogatories (Ex. B), 3. "The manufactured jewelry is sold by a separate entity, Greenville Ventures …" Id. at 2. Greenville Ventures is the only entity that sold the copyrighted works. Greenville Ventures is the only entity that ordered the works from manufacturers. Greenville Ventures is the only entity that paid money to the manufacturers.

### E.   South, Peters, Nix, and Malizia should be dismissed because they did not directly infringe, they did not contributorily infringe, and they are not vicariously liable.

Four of the individual Defendants, South, Peters, Nix, and Malizia, should be dismissed. Each did not directly infringe; each has zero equity in the defendant companies, zero revenue sharing, and does not otherwise receive compensation based on the allegedly infringing works; each has no authority to direct the allegedly infringing activities; and each had no knowledge of the alleged infringement before the lawsuit.

A direct claim for copyright infringement requires (1) ownership of a valid copyright and (2) unauthorized copying of the plaintiff's work. *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005). "Copying" means engaging in one of the exclusive rights at section

106. *Id.* at 207.  Six rights are listed by statute, although two of them ((4) and (6), concerning performances and sound recordings) do not apply to the types of works copyrighted in this case.  17 U.S.C. § 106.  The four rights that could conceivably be infringed with respect to jewelry or lead forms are:  (1) reproduce; (2) prepare derivative works; (3) distribute copies by means of sale or other transfer of ownership; and (5) display the copyrighted work publicly.

An individual who does not directly infringe may be held liable under either of two theories of secondary liability:  vicarious infringement and contributory infringement.  *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 386 (3d Cir. 2016).  Vicarious infringement requires that the defendant both (1) enjoys a direct financial benefit from another's infringing activity and (2) has the right and ability to supervise the infringing activity.  *Id.* at 388.

Contributory infringement requires that the defendant (1) have knowledge of another's direct infringement and (2) either induce that infringement or materially contribute to it.  *Id.* at 387.

### 1. Claims against the warehouse workers, South and Peters, should be dismissed.

Defendants South and Peters have the same job working in Defendants' warehouse.  Peters Dep. (Ex. G), 49:18 – 50:5.  Each is a "picker and packer."  South Dep. (Ex. H), 6:15-17; Peters Dep., 31:8-15.  Each works in Defendants' warehouse, wrapping ordered products and putting shipping labels on them.  South Dep., 6:18 – 7:1; Peters Dep., 31:12 – 32:2.  Each has a high school education.  South Dep., 7:4-14; Peters Dep., 6:12-22.  Plaintiff has offered no evidence that either South or Peters directly infringed.  Therefore, each could be liable only if Plaintiff were able to show vicarious or contributory infringement.

South and Peters do not satisfy either of the two requirements for vicarious liability.  Neither receives a direct financial benefit from the alleged infringement.  Both receive fixed

salaries, neither owns equity in the defendant companies, and neither is entitled to any revenue of the defendant companies.  South Dep., 21:21 – 22:14; Peters Dep., 37:5-11.  Neither South nor Peters has the right or ability to supervise the infringing activity.  Rather, each has a narrowly defined job as a "picker and packer" in Defendants' warehouse.

South and Peters do not satisfy either of the two requirements for contributory infringement.  Neither knew of the alleged copyright infringement.  South Dep., 43:13 – 44:3; Peters Dep., 35:7-18.  Plaintiff has offered no evidence that South or Peters knew or should have known of the alleged infringement.  Plaintiff has offered no evidence that South or Peters induced the infringement or materially contributed to the infringement.  Since Plaintiff has failed to offer any evidence that South or Peters directly infringed, contributorily infringed, or vicariously infringed, the claims against both individuals must be dismissed.

### 2. Claims against Nix must be dismissed.

Plaintiff has offered no evidence that Nix directly infringed.  Therefore, Nix could be liable only if Plaintiff were able to prove vicarious or contributory infringement.

Nix does not satisfy either of the two requirements for vicarious liability.  Nix does not receive a direct financial benefit from the alleged infringement.  Nix is paid a fixed salary, he owns no equity in the defendant companies, and he is not entitled to revenue sharing.  Nix Dep. (Ex. I), 95:21 – 96:2, 123:3-19.  Plaintiff also has no evidence that Nix had the right or ability to supervise the allegedly infringing activity.

Nix does not satisfy either of the two requirements for contributory infringement.  Nix did not know of the alleged infringement until he was served with the complaint.  Nix Dep., 157:15 – 158:21.  Plaintiff has offered no evidence that Nix induced the infringement or materially contributed to it.

Since Plaintiff has failed to offer any evidence that Nix directly infringed, contributorily infringed, or is vicariously liable, the claims against Nix must be dismissed.

### 3. Claims against Malizia must be dismissed.

Malizia is not an employee of Defendant The Tondo Group. Malizia Dep. (Ex. J), 7:19 – 8:8-5. Rather, Malizia is an independent contractor who does photography. Id. Plaintiff has not offered evidence that Malizia directly infringed. Therefore, Malizia could be liable only if Plaintiff were able to prove contributory infringement or vicarious liability.

Malizia does not satisfy either of the two requirements for vicarious liability. Malizia does not receive a direct financial benefit from the alleged infringement. Rather, he is an independent contractor with no equity or right to revenue sharing with respect to the defendant companies. Plaintiff also has no evidence that Malizia had the right or ability to supervise the allegedly infringing activity.

Malizia also does not satisfy either of the two requirements for contributory infringement. There is no evidence that Malizia had knowledge of the allegedly infringing activity. And there is no evidence that Malizia induced or materially contributed to the allegedly infringing activity.

Since Plaintiff has failed to offer evidence that Nix directly infringed, contributorily infringed, or is vicariously liable, the claims against Malizia must be dismissed.

### F. Huang is not the author of the works because she left design decisions to the discretion of the manufacturer. Unrefuted expert testimony establishes that Huang's two-dimensional pencil sketches did not contain sufficient information, leaving all design decisions to the manufacturer.

When a copyright plaintiff delegates the task of fixing the copyrighted work to a third party, such as a manufacturer, the plaintiff is an author only if the plaintiff provides detailed designs, blueprints, or prototypes to the manufacturer who simply has the task of mechanically fabricating the work as instructed. In contrast, a plaintiff who merely provides conceptual

guidance to the third-party manufacturer is not an author or joint author. "[C]ourts have attempted to draw a line between providing conceptual guidance that is fixed as a copyrightable work by a separate party and providing detailed designs or blueprints to a manufacturer that simply builds the work as instructed." *Billco Int'l, Inc. v. Charles Prods.*, 776 F. Supp. 2d 105, 112 (D. Md. 2011). "[A] person who merely describes to an author what the commissioned work should do or look like is not an author or joint author." *Id.* As the Federal Circuit explained in *Gaylord v. United States*, "if one commissioned a work for a cowboy riding a horse, that contribution would not constitute copyrightable expression. If one later instructed the artist to depict the cowboy as weathered, wearing a cowboy hat, and riding slowly in calm wind, that would not rise to the level of copyrightable expression." *Gaylord v. United States*, 595 F.3d 1364, 1379 (Fed. Cir. 2010). "A person who merely describes to an author what the commissioned work should do or look like is not a joint author for purposes of the Copyright Act." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989).

In response to document request 6, Plaintiff agreed to produce all of Huang's drawings, notes, drafts, and protypes concerning Huang's alleged design of the works of jewelry. Pl. Response to Document Req. (Ex. K), 5. The only such documents are seven pencil sketches on graph paper, one sketch for each of the seven works of jewelry:

> Army mom (Compl. Ex. A) corresponds to Ex. L at Pl000039.
> Caduceus ring (Compl. Ex. B) corresponds to Ex. L at Pl000009.
> Flying heart (Compl. Ex. C) corresponds to Ex. L at Pl000040.
> Hand heart (Compl. Ex. D) corresponds to Ex. L at Pl000022.
> Asclepius heart (Compl. Ex. E) corresponds to Ex. L at Pl000027.
> Caduceus (Compl. Ex. F) corresponds to Ex. L at Pl000032.
> Asclepius (Compl. Ex. G) corresponds to Ex. L at Pl000037.

Plaintiff produced no other documentation responsive to this request. Huang created no other drawings, no prototypes, no models, and no CAD (computer-aided-design) models. Huang

Dep. (Ex. C), 24:13 – 23:3, 23:24 – 27:16.  30:20 – 31:21.  There are no CAD (computer-aided design) files which Huang used to create the jewelry.  Pl. Resp. to Document Req. (Ex. K), 1.  Here, Huang's entire contribution to each of the seven works of jewelry was a single two-dimensional pencil sketch on paper which she sent to a third-party manufacturer in China.  These 2-D pencil sketches contained so little information that the third-party manufacturer was given discretion to make all creative design choices about the 3-D works of jewelry.

Defendants obtained expert testimony from a jewelry expert – the head of Temple University's Metals, Jewelry, and CAD/CAM program.  Bucci Report (Ex. M); Bucci Dep. (Ex. A).  Defendants' expert testimony is uncontradicted as Plaintiff did not retain an expert.  Huang's 2-D pencil sketches have no information on dimensional scale, how the pieces are rounded as they curve through three-dimensional space, how the various elements are joined together, finish, choice of metal, weight, or specific gravity.  Bucci Report, 5-6.  Huang essentially drew a flat picture of the front of a car and claimed to design a car, without drawing the rear, sides, top, bottom, or inside.  Bucci Dep., 133:23 – 135:10.  The result was that these design choices were left to the manufacturers discretion.  Bucci Dep., 135:11 – 136:5, 153:9-20; Bucci Report, 5-6.

This can also be seen in the evolution of the works from 1) Huang's sketches, to 2) the manufacturers schematics, to 3) the final three-dimensional works.  The final three-dimensional works depart significantly from Huang's pencil sketches, indicating that the manufacturer had to essentially start from scratch in designing a three-dimensional work.  Bucci Report, 6.

Unlike the Pennsylvania state courts, the federal courts may grant summary judgment based on self-serving testimonial evidence that is not contradicted by the opposing party's testimony or evidence.  *Schultz v. United States*, 2017 U.S. Dist. Lexis 21856, at 4-5 (W.D. Pa.

15

Feb. 16, 2017).  This includes uncontradicted expert reports.  *Stiso v. State Farm Fire & Cas. Co.*, 2015 U.S. Dist. Lexis 155762, at 25-26 (D.N.J. Nov. 18, 2015) (listing cases so holding). Here, Defendant's expert explained that the Huang sketches simply do not convey enough information, leaving all creative design choices to the third-party manufacturer.  Huang, who is only educated in the accounting field, does not have sufficient qualifications to opine on whether the manufacturer was simply translating her designs by rote into three dimensions or whether the manufacturer had to make design decisions based on the lack of information in her sketches.

Moreover, Defendant's expert explained that the designs did in fact change from Huang's initial sketches to the manufacturer's schematics, and again from the schematics to the three-dimensional works, indicating that the manufacturer did have to start from zero when fabricating these works.  Bucci Report, 6.

### G. The lead forms are at most entitled to thin copyright protection, requiring a virtually identical copy to prove infringement.

Where a work is simply a compilation of unprotectable elements, the copyright protection is "thin".  *Feist Publ'ns, Inc. v. Rural Tel.*, 499 U.S. 340, 349 (1991).  Thin copyright protection is infringed only by "virtually identical" copying.  *Schiffer Publ'g v. Chronicle Books, LLC*, 2004 U.S. Dist. Lexis 23052, at 31 (E.D. Pa. Nov. 12, 2004).  Here, the works newly-added to the case with the Second Amended Complaint are website lead forms – fill-in-the-blank and multiple choice questions which a prospective customer answers about their contact information (name, e-mail, phone, address), business (field, business name, size of the business), and shipping needs (e.g., number of boxes per month).  These are very generic questions as there are only so many ways one can ask for an e-mail, telephone number, and the like, and the questions are essential for anyone in the fulfillment business.

The Second Amended Complaint calls these copyrighted lead forms "Additional Copyrighted Works", ECF 21, ¶ 30, and attaches them at ECF 21, pages 60 – 102 (corresponding to Exs. W, X, and Y to the Second Amended Complaint). The Second Amended Complaint alleges that the infringing work is at ECF 21, pages 103 – 113 (corresponding to Ex. Z). No question on Plaintiff's claimed works overlaps completely with the questions on Defendants' works. At a minimum, the wording of the question, or the multiple choices, or both are different. Moreover, each of these questions is so generic that only the combination of them could conceivably receive any copyright protection. And the combination of questions in each of Plaintiff's lead forms is certainly different from the combination in Defendants' lead forms. The artwork in the background of both works is also different, thus further precluding a finding that both sets of works are "virtually identical."

In another example of just how aggressively Plaintiff has misused the work for hire doctrine and the Copyright Office's lack of scrutiny, Plaintiff's copyrighted lead forms were created by Defendant Jannuzzio. Jannuzzio Dep. (Ex. N), 140:20 – 141:17; Second Am. Compl. (ECF 21), ¶ 30. Plaintiff is suing Jannuzzio for allegedly copying his own works, which in turn have questions used by competitors.

There are three significant problems with Plaintiff's theory as to the lead forms. First, Plaintiff has not shown that these works were actually within the scope of Jannuzzio's employment. Second, the person who Plaintiff admits is the author, has testified that the Plaintiff's works were not original as Jannuzzio used the same generic questions that competitors use to gather and obtain background information about their customers and their fulfillment needs. Jannuzzio Dep. (Ex. N), 142:8 – 144:2. Thus, Jannuzzio's testimony about how he wrote *Plaintiff's* claimed works is uncontradicted evidence that they are not original. Third, any

similarity between Plaintiff's lead forms and Defendants' is explained by the fact that the same person wrote both Plaintiff's and Defendants' lead forms, not by an inference of copying. Both sets of works have the same author, who inevitably writes in the same voice with similar turns of phrase and collocations. Any "similarity" between the works is not circumstantial evidence of copying, but rather reflects the uncontested fact that the same person wrote both sets of works, and both sets of questions are common questions in the fulfillment industry.

### III. Conclusion.

For the foregoing reasons, Plaintiff cannot present a genuine issue of fact precluding summary judgment. The Motion should be granted and Plaintiff's claims should be dismissed.

Respectfully submitted,

/s/ *Evan L. Frank*
Evan L. Frank, Esq.
Alan L. Frank Law Associates, P.C.
135 Old York Road
Jenkintown, PA 19046
215-935-1000
215-935-1110 (fax)
efrank@alflaw.net
Counsel for Defendants

January 4, 2023